UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GABRIELLE HELEN SHEINER,

               Plaintiff,

– against –

ACTING SECRETARY ALEJANDRO MAYORKAS, *Secretary of the U.S. Department of Homeland Security*; UR M. JADDOU, *Director, United States Citizenship and Immigration Services*; ALISSA EMMEL, *Chief, Immigrant Investor Program Office, United States Citizenship and Immigration Services*; and UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,

               Defendants.[1]

**OPINION & ORDER**

21 Civ. 5272 (ER)

RAMOS, D.J.:

    Gabrielle Helen Sheiner commenced this action on June 14, 2021, alleging that Alejandro Mayorkas, Tracy Renaud, Sarah Kendall, and United States Citizenship and Immigration Services (collectively, "USCIS") unreasonably delayed adjudication of her Form I-526 Immigrant Petition by Alien Investor ("I-526 petition") in violation of the Administrative Procedure Act ("APA"). Sheiner also seeks a writ of mandamus compelling USCIS to adjudicate her I-526 petition, pursuant to the Mandamus Act. Pending before the court is USCIS' motion to dismiss the compliant in its entirety for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 39. For the reasons set forth below, the motion is GRANTED.

---

[1] Ur M. Jaddou is automatically substituted for Tracy Renaud as Director of United States Citizenship and Immigration Services. Alissa Emmel is automatically substituted for Sarah Kendall as Chief of the Immigrant Investor Program of USCIS. *See* Fed. R. Civ. P. 25(d) ("[a public] officer's successor is automatically substituted as a party").

I.     **BACKGROUND**[2]

*The EB-5 Program*

The Immigration and Nationality Act permits foreign nationals to obtain Lawful Permanent Resident ("LPR") status by applying for an employment based, fifth-preference ("EB-5") visa.  8 U.S.C. § 1153(b)(5).  During the relevant period, a foreign national could obtain an EB-5 visa by investing $500,000 in a new commercial enterprise[3] ("NCE") in a "targeted employment area"[4] that results in the creation of at least ten full-time jobs for those eligible to work in the United States.  *Id*. § 1153(b)(5)(C)–(D).  In making this investment, the foreign investor must place his capital at risk.  *Id.* § 1153(b)(5)(F).

Up until June 30, 2021, the Immigrant Investor Pilot Program (the "Pilot Program")—also known as the "Regional Center Program"—authorized USCIS to designate certain economic entities as "regional centers" in which foreign nationals could invest through an NCE.  8 C.F.R. §§ 204.6(j)(4)(iii), (m); ¶ 14.  Statutory authorization for the Pilot Program expired on July 1, 2021.  Between July 1, 2021 and March 15, 2022, USCIS placed I-526 petitions on hold until Congress passed legislation reauthorizing the program.  On March 15, 2022, President Biden passed the Consolidated Appropriations Act of 2022 which reinstated the Pilot Program with some amendments.  *See* The EB-5 Reform and Integrity Act of 2022, Pub. L. No. 117-103.  Since then, USCIS has announced they have resumed the processing of I-526 petitions based on the Regional Center Program which were filed before statutory authorization lapsed.  *See USCIS,* Policy Manual, Volume 6, Part G, Chapter 1, *available at*

---

[2] The following facts are based on the allegations in the complaint, which the Court accepts as true for purposes of the instant motion.  *See Koch v. Christie's Int'l PLC,* 699 F.3d 141, 145 (2d Cir. 2012).  Unless otherwise noted, citations to " ¶ __" refer to the complaint, Doc. 9.

[3] "Commercial enterprise means any for-profit activity formed for the ongoing conduct of lawful business[.]"  8 C.F.R. § 204.6(e).

[4] "Targeted employment area means an area that, at the time of investment, is a rural area or is designated as an area that has experienced unemployment of at least 150 percent of the national average."  *Id.*

2

/https://www.uscis.gov/policy-manual/volume-6-part-g-chapter-1. The Court takes judicial notice of the USCIS Policy Manual as a public record. *See Akran v. United States,* 997 F. Supp. 2d 197, 203 (E.D.N.Y. 2014) (internal quotation marks and citations omitted) (recognizing that agency and administrative records are public records of which a court may take judicial notice).

The first step to obtain an EB-5 visa is to file an I-526 petition with USCIS. *See* 8 C.F.R. § 204.6(a); ¶ 16. According to Sheiner, USCIS has regularly stated at public stakeholder meetings that its goal for adjudicating I-526 petitions is six months or less. ¶ 32. Likewise, in processing immigrant applications, including I-526 petitions, 8 U.S.C. § 1571(b) states that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application[.]" ¶ 31. If the I-526 petition is approved, the investor may then apply for two-year conditional LPR status.[5] *See* 8 U.S.C. § 1186b; ¶ 16. Once an applicant receives conditional LPR status, he may work anywhere in the United States and start a business. ¶ 19. The EB-5 investor, however, must maintain his investment at risk until the end of the two-year conditional residence period. ¶ 17. At the conclusion of the two-year conditional period, if USCIS determines that the investor has fulfilled the EB-5 requirements, it will grant him an EB-5 visa and unconditional LPR status. ¶ 16.

The Immigration and Nationality Act limits the number of immigrant visas issued to foreign nationals and the percentages of visas allotted to each country of origin. 8 U.S.C. §§ 1151, 1152. On January 29, 2020, USCIS issued a press release (the "Press Release"), announcing that it was changing its process for reviewing I-526 petitions from its prior "first-in, first-out," approach to a "visa availability" approach. *See* Press

---

[5] USCIS policy states, however, that if there is a "material change" in an applicant's investment—such that the project no longer satisfies the requirements to obtain an EB-5 visa—after he has filed an I-526 petition but before he has become a conditional resident, USCIS may deny or revoke the I-526 petition. ¶ 20. Once an investor has become a conditional resident, however, a material change will not prohibit the approval of that investor's petition to remove the conditions on his residence. ¶ 21. *See USCIS,* Policy Manual, Volume 6, Part G, Chapter 6, *available at* https://www.uscis.gov/policy-manual/volume-6-part-g-chapter-1.

Release, U.S. Citizenship and Immigration Services, *USCIS Adjusts Process for Managing EB-5 Visa Petition Inventory* (Jan. 29, 2020), https://www.uscis.gov/archive/uscis-adjusts-process-for-managing-eb-5-visa-petition-inventory.[6] In contrast to its previous approach, *i.e.*, reviewing petitions in the order in which they were filed, USCIS now prioritizes petitions filed by individuals from countries where visas are immediately available. USCIS determines whether a visa is available to a petitioner by comparing his country of birth with the Department of State's Monthly Visa Bulletin, which indicates the availability of visas by country. *Id.*; *see* Department of State, Bureau of Consular Affairs, *Visa Bulletin for June 2022,* https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin.html (last visited March 17, 2023).[7] USCIS manages their inventory by factoring in whether a visa is available to a petitioner and whether the NCE associated with that petitioner has been approved. *See* USCIS, Questions and Answers: EB-5 Immigrant Investor Program Visa Availability Approach (April 2, 2021) https://www.uscis.gov/working-in-the-united-states/permanent-workers/employment-based-immigration-fifth-preference-eb-5/questions-and-answers-eb-5-immigrant-investor-program-visa-availability-approach.[8] When a visa is determined to be available to a petitioner under these two criteria, USCIS generally manages these petitions on a first-in-first-out basis. *See* USCIS, Questions and Answers: EB-5 Immigrant Investor Program Visa Availability Approach (April 2, 2021) https://www.uscis.gov/working-in-the-united-states/permanent-workers/employment-based-immigration-fifth-preference-eb-5/questions-and-answers-eb-5-immigrant-investor-program-visa-availability-approach. By consequence, the visa availability approach purportedly enables petitioners to better use their annual-per-country allocation of EB-5 visas and permits qualified petitioners

---

[6] The Court takes judicial notice of the Press Release as a public record. *See Akran,* 997 F. Supp. 2d at 203.

[7] The Court takes judicial notice of the Department of State's Visa Bulletin as a public record. *Id.*

[8] The Court takes judicial notice of the Questions and Answers as a public record. *Id.*

from traditionally underrepresented countries to have their petitions approved in a more timely fashion. *See id.*; Press Release.

### *Sheiner*

Sheiner is a citizen of Canada who currently resides in New York City. ¶¶ 4, 18. On June 14, 2019, she filed an I-526 petition with USCIS after investing $500,000 into an NCE named Cleveland International Fund - One University Circle Apartments, Ltd. (the "Fund"), through the then-operative Pilot Program. ¶¶ 1, 4. The Fund was formed to develop a 280-unit multi-family complex in Cleveland, Ohio, a targeted employment area. ¶ 26. Sheiner's I-526 petition has been pending adjudication by USCIS for approximately forty-five months, nearly four years. ¶ 2.

Sheiner alleges that she has been damaged by USCIS' purported delay in that she cannot apply for conditional LPR status—which would enable her to pursue certain career goals in consultancy the United States, *see* ¶ 19—until USCIS adjudicates her petition. More generally, Sheiner alleges that she "faces ongoing uncertainty about her future, which hinders her ability to make career and life choices, and deprives her of her peace of mind of knowing what her future will be." ¶ 91. Sheiner also notes that "[t]he longer the petition is pending, the greater the risk that [she] will be[come] the victim of an unannounced policy change that [could] render her petition . . . no longer approvable."[9] ¶ 21. Additionally, Sheiner alleges that she continues to bear the risk that a material change to the operation of the Fund could cause USCIS to deny her petition. ¶ 20.

Separately, Sheiner alleges that processing times for adjudicating I-526 petitions has intentionally increased. ¶¶ 33–37. According to Sheiner, the number of petitions processed in 2020 dropped 70% compared to the number of petitions processed in 2018

---

[9] Specifically, Sheiner asserts that as of November 21, 2019 (after she filed her petition), USCIS has required EB-5 visa applicants to invest *$900,000*—as opposed to $500,000—in a targeted employment area. ¶ 26. Thus, Sheiner claims that if USCIS denied her petition, and if she wanted to apply again, she would need to make an investment of nearly double the amount of money that she invested in the Fund. *Id.*

5

and dropped 25% compared to the number of petitions processed in 2019. ¶¶ 36, 37; Doc. 41-2 at 1. Put differently, USCIS processed 12,000 fewer petitions in 2020 than in 2018, and 1,200 fewer than in 2019. ¶ 36.

Sheiner also claims that USCIS' staff has increased. ¶¶ 65–67, 70; *compare* Transcript, U.S. Citizenship and Immigration Services Meeting with IIUSA (Oct. 18, 2018) https://www.uscis.gov/sites/default/files/files/nativedocuments/USCIS_Cissna_IIUSA_Meeting_and_Statistical_Analysis_Charts.pdf (providing that USCIS had a staff of 200 in 2018); *with* USCIS, Questions and Answers: EB-5 Immigrant Investor Program Visa Availability Approach (April 2, 2021) https://www.uscis.gov/working-in-the-united-states/permanent-workers/employment-based-immigration-fifth-preference-eb-5/questions-and-answers-eb-5-immigrant-investor-program-visa-availability-approach (providing that USCIS had a staff of 236 in 2021). The Court takes judicial notice of the Transcript as a public record. *See Akran,* 997 F. Supp. 2d at 203.

Additionally, USCIS processed more than 15,000 cases in 2018. ¶ 34. In Fiscal Years 2020 and 2021, however, USCIS respectively processed merely 3,048 and 3,421 petitions. ¶ 36; Doc. 41 at 6; USCIS Reports by Quarter, Form Status, and Processing Time Fiscal Year 2020; USCIS Reports by Quarter, Form Status, and Processing Time Fiscal Year 2021.[10] According to these quarterly reports, the number of applications received by USCIS through the EB-5 Regional Center program has dramatically decreased. ¶ 65. Despite the number of applications received decreasing and its staff increasing, the backlog of I-526 petitions filed with USCIS has increased since 2019. ¶ 66. At the end of fiscal year 2020, the number of pending I-526 petitions was 15,603. ¶ 53.

Sheiner alleges that the average processing times for I-526 petitions in fiscal year 2019 was 19 months. ¶ 43. At the time she filed her complaint, however, USCIS posted

---

[10] The Court takes judicial notice of the USCIS Quarterly Reports as public records. *See Akran,* 997 F. Supp. 2d at 203.

6

an average processing time of between 31 and 49.5 months for investors not subject to the mainland China quota.[11] ¶ 45; *see USCIS,* Check Case Processing Times, https://egov.uscis.gov/processing-times/ (last visited March 17, 2023).

## II.   PROCEDURAL HISTORY

Sheiner brought this action on June 15, 2021, two years after filing her I-526 petition. Doc. 9. On September 9, 2021, the parties advised the Court that the statutory authorization pertaining to the Pilot Program, through which Sheiner made her investment in the Fund, had expired on July 1, 2021. Doc. 27. The parties noted, however, the possibility that Congress would renew the Pilot Program. *Id.* Accordingly, they requested that the Court stay this action until thirty days after Congress enacted reauthorization legislation. The Court granted the parties' request the following day. Doc. 28. On April 14, 2022, USCIS filed a letter with the Court, advising that on March 15, 2022, President Biden signed into law the Consolidated Appropriations Act, which authorized a new EB-5 Regional Center Program, and requested that the case proceed. Doc. 30. That same day, the Court lifted the stay. Following a pre-motion conference, USCIS filed the instant motion to dismiss on June 30, 2022. Doc. 39.

## III.   LEGAL STANDARD

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Koch v.*

---

[11] The current processing time for an I-526 petition for an investor not subject to the mainland China quota is 58.5 months. *See* https://egov.uscis.gov/processing-times/. In considering a motion to dismiss, a district court "can consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002)). For a document to be incorporated by reference, "the complaint must make 'a clear, definite, and substantial reference to the document[].'" *DeLuca v. AccessIT Grp., Inc.,* 695 F. Supp. 2d 54, 60 (S.D.N.Y. 20120) (quoting *Helprin v. Harcourt, Inc.,* 277 F. Supp. 2d 327, 330–31 (S.D.N.Y. 2003)). The Court accordingly takes judicial notice USCIS' Case Processing Times website as incorporated by reference in the complaint. ¶¶ 44, 45.

*Christie's Int'l, PLC,* 699 F.3d 141, 145 (2d Cir. 2012). However, the Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly,* 550 U.S. at 570.

## IV. DISCUSSION

USCIS argues that the Court should dismiss the APA and mandamus claims because USCIS has not unreasonably delayed adjudicating Sheiner's I-526 petition. Section 555(b) of the APA requires agencies to "conclude a matter presented to it" "within a reasonable time[.]" *See* 5 U.S.C. § 555(b). Section 706(1) permits courts to "compel agency action unlawfully withheld or unreasonably delayed." *See id.* § 706(1). In evaluating whether an agency has unreasonably delayed adjudicating an I-526 petition, courts in this District apply the factors set forth in *Telecomm. Research and Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) (hereinafter "*TRAC*").[12] *See National Resources*

---

[12] Sheiner argues that the Court should refrain from administering the *TRAC* test until after the close of discovery. The Court disagrees. "[T]he weight of authority appears to cut in favor of deciding unreasonable-delay claims at the motion-to-dismiss stage before discovery." *Telles v. Mayorkas*, 21 Civ. 395 (TJK), 2022 WL 2713349, at *3 n.3 (D.D.C. July 13, 2022) (marks omitted) (quoting *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 50 (D.D.C. 2021)); *see, e.g.*, *Saharia v. USCIS,* No. 21 Civ. 3688 (NSR), 2022 WL 3141958, at *4 (S.D.N.Y. Aug. 5, 2022) (applying the *TRAC* factors on motion to dismiss); *see also Lyons v. USCIS,* No. 21 Civ. 3661 (JGK), 2023 WL 144879, at *3–4 (S.D.N.Y. Jan. 10, 2023) (same); *Eduardo Echegoyen Cohen v. USCIS*, 21 Civ. 5025 (PAC), 2023 WL 2526105, at *3 (S.D.N.Y. Mar. 15, 2023) (same).

*Defense Council, Inc. v. U.S. Food and Drug Admin.*, 710 F.3d 71, 84 (2d Cir. 2013) (acknowledging *TRAC* as "setting forth test for determining if agency action is unreasonably delayed"). These factors are:

> "(1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed."

*TRAC,* 750 F.2d at 80 (internal quotation marks and citations omitted).

   a. **First *TRAC* Factor**

The first *TRAC* factor asks whether the agency had adopted a "rule of reason" to govern its approach to adjudication. *TRAC,* 750 F.2d at 80. Courts have characterized this factor as being the "most important factor" of the six. *In re Core Communications, Inc.,* 531 F.3d 849, 855 (D.C. Cir. 2008). "Indeed, only the first *TRAC* factor is phrased as a categorical command: the time agencies take to make decisions *must* be governed by a rule of reason." *Liu v. Mayorkas*, No. 20 Civ 654 (CRC), 2021 WL 2115209, at *3 (D.D.C. May 25, 2021) (emphasis in original). "It requires an inquiry into whether there is any rhyme or reason for the Government's delay[, *i.e.,*] . . . whether the agency's response time . . . is governed by an identifiable rationale." *Palakuru*, 521 F. Supp. 3d at 49–50 n.5 (marks and citations omitted).

USCIS argues that the "visa availability" approach to processing I-526 petitions is a governing rule of reason sufficient to satisfy the first *TRAC* factor. The visa availability approach gives priority to petitioners from countries where visas are currently available or will soon become available. *See* Press Release; Doc. 40 at 21. After determining whether the petitioner is from a country where a visa is readily available, USCIS then

9

processes these petitions on a first-in-first-out basis. *See* Questions and Answers. This approach, USCIS argues, is consistent with Congress' intent for the EB-5 Program and increases fairness in the process by allowing those countries with available visas allocated to them to be represented and have their petitions processed "in a more timely fashion." Doc. 40 at 21; Press Release.

  The Court agrees and finds that the visa availability approach is a rule of reason. The majority of courts in this District have determined the same. *See, e.g.*, *Cohen*, 2023 WL 2526105, at *4 (deeming the visa availability approach a rule of reason); *Saharia*, 2022 WL 3141958, at *5 (same). As have many other courts. *See, e.g., Palakuru,* 521 F. Supp. 3d at 51; *Telles*, 2022 WL 2713349, at *3; *Mokkapati v. Mayorkas,* No. 21 Civ. 1195 (BAH), 2022 WL 2817840, at *5 (D.D.C. July 19, 2022); *Jain v. Renaud,* No. 21 Civ. 3115 (VKD), 2021 WL 2458356, at *4 (N.D. Cal. June 16, 2021).

  Sheiner sets forth three arguments for why this factor weighs in her favor. First, she argues that her petition should be processed faster because she is from Canada, a country where visas are available, and her NCE has been approved. Second, Sheiner argues that the adjudication rate for I-526 petitions is generally unreasonable. Lastly, Sheiner argues that even if USCIS' process in adjudicating I-526 applications is reasonable, it should still be held liable for overall wait times. For the reasons set forth below, the Court finds each of these arguments unavailing.

  First, Sheiner argues that because she is from Canada, where there are visas available, and her NCE has been approved, her petition should be moved closer to the front of the line. Doc. 41 at 18. This argument is unavailing. She alleges that the average processing times for I-526 petitions in fiscal year 2019 was 19 months. ¶ 43. At the time she filed her complaint, USCIS posted an average processing time of between 31 and 49.5 months for investors not subject to the mainland China quota. ¶ 45; *See USCIS,* Check Case Processing Times, https://egov.uscis.gov/processing-times/ (last visited March 17, 2023). Currently, 80% of I-526 petitions are processed within 58.5 months.

10

*See USCIS,* Check Case Processing Times, https://egov.uscis.gov/processing-times/ (last visited March 17, 2023). Sheiner's petition has been pending for approximately 37 months, excluding the 8.5-month period between the expiration of the Pilot Program and President Biden's signing into law the Consolidated Appropriations Act. *See* Doc. 40 at 22. Accordingly, her petition has been pending for several months less than the average processing time for the majority of petitions. Even if the Court were to include this 8.5-month lapse, Sheiner's petition would still be pending for less than the average time it takes to process petitions. Sheiner's argument also fails to consider other similarly situated petitioners who are from under-subscribed countries and whose NCEs have been approved that are also pending processing of their own petitions. *See Telles*, 2022 WL 2713349, at * 3–4 (finding that because the plaintiff's petition was still within reasonable processing times, the first *TRAC* factor weighs in favor of the defendants); *Palakuru,* 521 F. Supp. 3d at 51 (finding that although petitioner's petition satisfied the visa availability requirements, there were still petitioners ahead of him in line who also satisfied visa availability requirements).

Second, Sheiner argues that the adjudication rate is generally unreasonable. In *Telles,* the plaintiff argued that historical processing times proved USCIS' rate of adjudicating I-526 petitions was unreasonable. *See Telles,* 2022 WL 2713349, at *4. When the plaintiff sued for unreasonable delay, his petition was pending less than the average and median processing times. *See id.* The *Telles* court noted that while the 42 month delay—which included the 8.5-month statutory lapse—was an "admittedly long time[,]" the plaintiff alleged no facts that would "allow the [c]ourt to plausibly infer an aberration from the [visa availability process]." *Id.*

Like in *Telles*, Sheiner does not allege sufficient facts that would allow this Court to make a plausible inference that the visa availability approach is not being adhered to. As discussed above, the Sheiner's petition is still pending within normal and average processing times. Her argument does not account for the fact that there are other

11

petitioners from Canada in the same situation as her, who filed petitions before she did. *See Telles*, 2022 WL 2713349, at *4; *Palakuru,* 521 F. Supp. 3d at 51.

Sheiner also cites data issued by USCIS to argue that it cannot possibly be following the visa availability approach in processing I-526 petitions. Doc. 41 at 18–21. Specifically, Sheiner alleges that USCIS has intentionally delayed processing petitions because statistic show a decrease in the number of petitions received by USCIS per year, a decrease in the number of petitions processed per year, an increase in processing times over a period of years, and the case backlog remaining virtually unchanged. Doc. 9 ¶¶ 36–70. In cases "where the plaintiff alleged facts related to a years-long increase in processing times with a simultaneous[] decrease in petitions[,]" courts have denied motions to dismiss for claims brought under the APA. *Cohen,* 2023 WL 2526105, at *5 n.6; *see Lyons*, 2023 WL 144879, at *4–5 (concluding that a plausible allegation of not abiding by the purported rule of reason precludes determination of whether the visa availability approach is governed by a rule of reason). The Court finds, however, that Sheiner's allegations "lack factual content [to support a] reasonable inference that [USCIS] is liable for the misconduct alleged." *Thakker,* 2021 WL 1092269, at *8 (marks omitted).

Lastly, Sheiner argues that even if USCIS' adjudication process is reasonable, USCIS should still be liable for overall wait times. This argument is unconvincing. Sheiner's argument does not take into account the period between July 1, 2021 and March 15, 2022 when USCIS was unable to process I-526 petitions after statutory authorization for the Pilot Program expired. Adjudication of Sheiner's petition has not been unreasonably delayed, "especially when USCIS was unable to act on plaintiff's petition for nine … months given the lapse in statutory authorization for the Regional Center Program…." *Mokkapati,* 2022 WL 2817840, at *6. Sheiner does not allege that *her* petition was treated differently than others similarly situated. Nor does she take into account the fact that courts have "refused to grant relief … where a judicial order putting

12

the petitioner ahead of the queue would simply move all others back one space …." *Palakuru,* 521 F. Supp. 3d at 52.

Based on the complaint and documents of which the court may take judicial notice, USCIS has supplied a rule of reason sufficient to tip the first *TRAC* factor in its favor.

### b. Second *TRAC* Factor

The second *TRAC* factor states that "where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason." *TRAC,* 750 F.2d at 80. According to 8 U.S.C. § 1571(b), "[i]t is the sense of Congress that the processing of an immigrant benefit application should be completed not later than 180 days after the initial filing of the application." USCIS argues that this statute is neither "mandatory nor conferring an enforceable right." Doc. 40 at 27.

Sheiner argues that while it is not mandatory, § 1571(b) "provides context for determining what constitutes a reasonable time for [USCIS] to process a petition." Doc. 41 at 22. Sheiner also points to the EB-5 Reform and Integrity Act of 2020 which sets goals of adjudicating petitions between 90 and 240 days. See Doc. 41 at 22.

While § 1571(b) is non-binding, *see Palakuru,* 521 F. Supp. 3d at 51 (finding the second *TRAC* factor weighed in favor of the government even though pending adjudication of plaintiff's visa petition exceeded 180 days), courts in this District have nonetheless found that it provides "an indication of the speed in which it expects the agency to proceed." *Lyons,* 2023 WL 144879, at *7 (marks omitted); *see Cohen*, 2023 WL 2526105, at *5 ("[A]lthough this factor weighs in [p]laintiff's favor as 'it is certainly an indication of Congress' stated goal of processing visa petitions within six months,' it does not 'automatically' render the delay in this case as unreasonable.") (quoting *Saharia*, 2022 WL 3141958, at *6)).

13

Even excluding the period of approximately 8.5 months in which statutory authorization for the Pilot Program was suspended, the delay in adjudicating Sheiner's petition "far exceeds the 180-day (or six-month) timeframe" set out in §1571(b), "and even the 240-day (or [eight]-month) timeframe" set out in the EB-5 Reform and Integrity Act of 2020. *Lyons,* 2023 WL 144879, at *7. Accordingly, the second *TRAC* factor weighs in favor of Sheiner. *See Lyons,* 2023 WL 144879, at *7 (31-month delay tipped second *TRAC* factor in plaintiff's favor); *Liu*, 2021 WL 2115209, at *5 (29-month delay tipped the second *TRAC* factor in plaintiff's favor); *Uranga v. U.S. Citizenship & Immigration Services,* 490 F. Supp. 3d 86, 103 (D.D.C. 2020) (finding the second *TRAC* factor weighed in favor of the plaintiff where delay was longer than 180 days).

c. **Third and Fifth *TRAC* Factors**

"The third and fifth *TRAC* factors, often considered together, require the Court to examine the nature and extent of the interests prejudiced by delayed agency adjudication." *Saharia,* 2022 WL 3141958, at *6 (first citing *TRAC,* 750 F.2d at 80; and then citing *Ying Yu Liu v. Wolf,* No. 19 Civ. 410 (PGG), 2020 WL 2836426, at *9 (S.D.N.Y. May 30, 2020)). Analysis of these factors "requires careful consideration and weighing of the circumstances of a case." *Lyons,* 2023 WL 144879, at *8; *See Thakker,* 2021 WL 1092269, at *8 (finding the third and fifth *TRAC* factors weighed in favor of the government where plaintiffs' harms amounted to general assertions that their lives were being put on hold); *Nohria,* 2021 WL 950511, at *6 n.5 (finding delay itself is not sufficient to show human health and welfare are at stake under the third and fifth *TRAC* factors). Facts alleging "substantial uncertainty about their employment, families, and futures" are significant in tipping these factors in the plaintiff's favor. *Lyons,* 2023 WL 144879, at *8; *see Saharia,* 2022 WL 3141958, at *6 (finding the third and fifth *TRAC* factors tipped in the plaintiff's favor where plaintiff alleged significant employment difficulties and a possibility of being forced to return to their country of origin); *Liu,* 2021

WL 2115209, at *5 (third and fifth factors weighed in favor of plaintiff where plaintiff alleged struggles in finding employment due to his immigration status).

Sheiner alleges that she has been damaged by USCIS' failure to adjudicate her I-526 petition as she faces "considerable uncertainty about her future as she does not know when, or if, [USCIS] will adjudicate her petition." ¶ 18; 89. She further contends that she has "long-term career goals in the U.S., which include a desire to pursue a career in consultancy [in] New York City, New York," and that the delay in adjudication of her petition delays her ability to relocate, work, become a citizen of the U.S., and start other businesses in the U.S. ¶ 19. She claims the delay is causing her uncertainty about her future which is setting her back from making choices about her life and career. ¶ 91.

USCIS argues that the third and fifth factors weigh in its favor because the alleged harm is an inherent part of the process. Doc. 40 at 28. *See Fangfang Xu v. Cissna,* 434 F. Supp. 3d 43, 54 (S.D.N.Y. 2020) (general assertions of significant harm and not "receiving the full rights, privileges and benefits" is prejudice which is inherent in the asylum application process).

Here, Sheiner has not alleged any significant harm to her health or welfare due to the delay of adjudicating her petition. Sheiner's allegations of uncertainty and delay do not amount to the showing other courts have held meets the standard of human health and welfare being at stake. *See Saharia,* 2022 WL 3141958, at *6–7 (plaintiff alleged inability to change position without risk to current immigration status, possibility of being forced back to home country with wife and child). It is not apparent that Sheiner is unable to work in the United States without obtaining LPR status, nor is it apparent that Sheiner faces substantial risks to the health of her and her family. While Sheiner has important personal interests in the adjudication of her petition, "so too do many others facing similar circumstances." *Palakuru,* 521 F. Supp. 3d at 53. Sheiner additionally alleges that USCIS policy states that if there is a "material change" in the investment before the investor has become a conditional resident, this material change is ground for

15

the denial or revocation of the I-526 petition. However, this material change provision affects all investors choosing to obtain LPR status through the EB-5 Regional Center program and thus does not have merit. Interpreting Sheiner's allegations in the light most favorable to her, the Court deems her purported prejudices inherent to the application process.

Accordingly, the third and fifth *TRAC* factors favor USCIS.

### d. Fourth *TRAC* Factor

The fourth *TRAC* Factor requires courts to "consider the effect of expediting delayed action on agency activities of a higher or competing priority." *TRAC,* 750 F.2d at 80. "Specifically, whether expediting the adjudication of [a p]laintiff's I-526 petition would harm other agency activities of equal or greater priority." *Saharia,* 2022 WL 3141958, at *7.

USCIS argues that granting relief to Sheiner would require them to improperly advance Sheiner's petition ahead of other petitioners who have been waiting longer, many of whom have their own interest at stake. Doc. 40 at 30. Courts have found that when granting a plaintiff relief would simply move them to the front of the line, the fourth factor weighs in favor of the government. *See Saharia,* 2022 WL 3141958, at *8 (where plaintiff did not provide a sufficient reason as to why his petition should be moved ahead of others similarly situated, the fourth *TRAC* factor weighed in favor of the government); *Thakker,* 2021 WL 1092269, at *7; *Palakuru,* 521 F. Supp. 3d at 53. As discussed above, even when all other factors in *TRAC* have favored the petitioner, courts have "refused to grant relief … where a judicial order putting the petitioner ahead of the queue would simply move all others back one space …." *Palakuru,* 521 F. Supp. 3d at 52. The Court agrees with USCIS.

Sheiner argues that because USCIS has not shown that they process petitions on a first-in-first-out basis, they have not shown that expediting her petition would put her ahead of investors who have filed earlier. *See* Doc. 41 at 26. Because Sheiner alleges

16

USCIS is not following the visa availability approach to process I-526 petitions, there is no evidence that she would be placed at the head of the line. *See* Doc. 41 at 27. This argument is conclusory and speculative. Sheiner has not alleged sufficient facts to support an inference that USCIS is not adhering to the visa availability approach in processing I-526 petitions.

Sheiner also argues that the Court may grant relief by compelling USCIS to increase all processing times, rather than her specific I-526 petition. *See id*. Courts may grant relief by "compelling USCIS to increase its processing rate, thus producing net gain for I-526 petitioners as a group" if such allegations are proven true. *Liu,* 2021 WL 2115209, at *5 (internal quotations omitted). As discussed above, however, Sheiner has not plausibly alleged that USCIS has unreasonably delayed in the processing of I-526 petitions. The Court therefore declines to grant this form of relief, and the fourth *TRAC* factor weighs in favor of USCIS.

e. **Sixth *TRAC* Factor**

"The sixth *TRAC* factor notes that the Court need not find any impropriety lurking behind agency lassitude in order to hold the agency action is unreasonably delayed." *Thakker,* 2021 WL 1092269, at *8 (marks omitted).

Sheiner alleges that USCIS' reduction in case processing was intentional. Doc. 9 ¶ 38. However, as noted above, these allegations have not been pled with sufficient facts to state a claim that is plausible on its face. *See Iqbal*, 556 U.S. at 678; *Lyons,* 2023 WL 144879, at *9 (finding allegations of systematic indifference did not amount to impropriety to tip the sixth factor in plaintiff's favor). Under *TRAC,* however, "the lack of plausible allegations of impropriety does not alter the Court's analysis." *Thakker,* 2021 WL 1092269, at *8 (citations omitted). Accordingly, the sixth factor is neutral at this stage.

In summary, the first, third, fourth, and fifth *TRAC* factors weight in favor of USCIS. The second *TRAC* factor weighs in favor of Sheiner. The sixth *TRAC* factor is

neutral at this stage of the proceedings. Accordingly, the Court grants USCIS' motion to dismiss as to Sheiner's APA claim.

### f. Mandamus Claim

Sheiner also seeks a writ of mandamus compelling USCIS to adjudicate her I-526 petition. Under the Mandamus Act, the Court has jurisdiction to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Mandamus relief is appropriate only when "(1) the plaintiffs have a right to have the act performed, (2) the defendant is under a clear nondiscretionary duty to perform the act requested, and (3) plaintiff has exhausted all other avenues of relief." *City of New York v. Heckler,* 742 F.2d 729, 739 (2d Cir. 1984).

Here, Sheiner's mandamus claim fails because she has not exhausted all other avenues of relief. Relief is still available to her under the APA. *See Cohen,* 2023 WL 2526105, at *7 (dismissing plaintiff's mandamus claim because relief was still available under the APA); *Sharkey v. Quarantillo*, 541 F.3d 75, 93 (2d Cir. 2008) (holding that where mandamus claims "duplicate" claims under the APA, the mandamus claims should be dismissed); *Fangfang Xu,* 434 F. Supp. 3d at 56; *Liu,* 2020 WL 2836426, at *10. Accordingly, the Court grants USCIS's motion to dismiss the mandamus claim.

## V. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is **GRANTED**. The Clerk of Court is respectfully directed to terminate the motion, Doc. 39, and close this case.

It is SO ORDERED.

Dated:   March 29, 2023
        New York, New York

                                                                 EDGARDO RAMOS, U.S.D.J.